**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 1:20-cv-853 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DANIEL K. BOICE and TRUSTIFY, INC., | |
| Defendants, | |
| and | |
| GOLEAN DC, LLC, and JENNIFER MELLON, | |
| Relief Defendants. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendants Daniel K. Boice ("Boice") and Trustify, Inc. ("Trustify") (collectively, "Defendants") and relief defendants GoLean DC, LLC ("GoLean") and Jennifer Mellon ("Mellon") and alleges as follows:

## SUMMARY

1.      This matter concerns an offering fraud conducted by Boice through his company, Trustify, an online marketplace designed to connect customers to a network of private investigators.

2.      Between 2015 and 2018, Defendants raised over $18.5 million from more than 90 investors by making materially false and misleading statements and omissions about, among

other things, Trustify's revenue growth, its corporate client base and size of its investigator network, and the use of investor funds.

3.     Boice also defrauded Trustify's largest existing investor into reinvesting $1.957 million by, among other things, providing a false document stating that an influential investment bank had joined as lead investor for that round—something the investor required prior to giving Trustify the money.

4.     Although Boice held Trustify out to investors as a successful technology start-up with growing revenues and a strong corporate client base, Trustify was a failing business.

5.     By the fall of 2018, Trustify was unable to pay its vendors and employees and effectively ceased operations.  Yet Boice continued to solicit funds from investors without notifying existing or prospective investors of Trustify's dire financial condition.

6.     Boice misappropriated at least $8 million of investor funds to pay for personal expenses for himself and his then-wife and colleague, Jennifer Mellon, including private jet charters, vacations, a luxury car, jewelry, and mortgage payments on their personal residence and a beach house.  Boice also diverted hundreds of thousands of dollars to his purported consulting company, GoLean.

7.     By engaging in the conduct described in this Complaint, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8.     Relief Defendants GoLean and Mellon have been unjustly enriched, as they received proceeds of the fraud to which they had no legitimate claim.

## JURISDICTION AND VENUE

9.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the

Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange

Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin such acts, transactions, practices, and courses of

business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other

and further relief as the Court may deem just and appropriate.

10.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and

22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e),

and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11.     Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15

U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Defendant Boice

resided in this district at all times relevant to this Complaint, and this district was the principal

place of business for Defendant Trustify and Relief Defendant GoLean.  Relief Defendant

Mellon also resides in the district.

12.     In addition, certain of the acts, practices, and courses of business constituting the

violations of the federal securities laws alleged herein occurred within the Eastern District of

Virginia.

## DEFENDANTS

13.     **Daniel K. Boice**, age 40, was a resident of Alexandria, Virginia at all times

relevant to this Complaint and currently resides in Fernandina Beach, Florida.  Boice founded

and was the Chief Executive Officer ("CEO") of Trustify.  Boice also founded GoLean, which is

described more fully below.

14.    **Trustify, Inc.,** formerly known as FlimFlam, is a Delaware corporation formed by Boice in 2015 that maintained an office in Arlington, Virginia.  Trustify was a start-up technology company that operated an online application to connect private investigators with individuals and businesses.

## RELIEF DEFENDANTS

15.    **GoLean DC, LLC** is a Virginia corporation founded by Boice in June 2014 as a purported consulting company with an office address in Arlington, Virginia.  As of September 30, 2015, GoLean was listed as inactive on Virginia's corporate registry for failing to pay its annual registration fee.

16.    **Jennifer Mellon**, age 38, is a resident of Alexandria, Virginia.  From 2015 to late 2018, Mellon was the Vice-President and Director of Trustify and was married to Defendant Boice.

## FACTS

**I.    DEFENDANTS FRAUDULENTLY INDUCED INVESTORS TO BUY TRUSTIFY STOCK AND PROMISSORY NOTES**

17.    Boice founded Trustify (then called FlimFlam) in January 2015 as a technology company purportedly designed to operate and maintain an online platform to connect individuals and businesses with a network of private investigators.

18.    Trustify's only source of revenue was the fees earned when a customer used its technology to engage the services of an in-network private investigator.

19.    As Trustify's CEO, Boice solicited investments in the company, hired a staff, and appointed a Board of Directors.

20.    Mellon was the President and Director of Trustify and also served on Trustify's Board.  During that time, Mellon and Boice were married and owned joint bank accounts, real

estate, and other assets.

21.     Between 2015 and 2018, Defendants conducted the following equity and debt

securities offerings (collectively, the "Offerings"):

| Funding Round | Approximate Start Date | Approximate End Date | Investors Per Offering | Total Invested |
|---|---|---|---|---|
| Seed 1 Preferred Stock ("Seed 1") | 2/2015 | 11/2015 | 26 | $1,827,402 |
| Seed 2 Preferred Stock ("Seed 2") | 12/2015 | 12/2016 | 52 | $5,355,822 |
| Convertible Promissory Notes ("Note Offering") | 12/2016 | 5/2017 | 23 | $2,911,732 |
| Series A Preferred Stock ("Series A") | 5/2017 | 10/2017 | 8 | $5,479,994 |
| Series B Preferred Stock ("Series B") | 3/2018 | 7/2018 | 12 | $2,980,794 |

22.     To market Trustify's securities to potential investors, Boice created, or caused to

be created, slide presentations ("Investor Presentations") for the Offerings.  The Investor

Presentations set forth, among other things, an overview of Trustify's business, its quarterly

and/or annual revenue, lists of significant clients, and the intended use of investor proceeds.

23.     Boice emailed quarterly updates ("Quarterly Updates") to existing investors,

which purported to set forth Trustify's alleged successes, revenue and other "key performance

indicators," and plans for future growth, among other information.

24.     Boice successfully used Quarterly Updates to induce certain existing investors to

make additional investments in Trustify.

25.     By the fall of 2018, Trustify was unable to pay its vendors and employees, yet

Boice continued to solicit investments by lying to prospective investors about Trustify's revenue,

its corporate client base and the size of its investigator network, and the use of investor funds,

among other things.

26.     In total, Defendants used deceptive conduct and the material misstatements and omissions discussed herein to induce more than 90 investors located in multiple states, including those in the Eastern District of Virginia, to invest a total of approximately $18.5 million in Trustify stock and promissory notes.

**A.     Defendants Misrepresented Trustify's Quarterly and Annual Revenue**

27.     From at least January 2016 through October 2018, Defendants lied about Trustify's revenue in Investor Presentations and Quarterly Updates to give the false impression that Trustify was a successful technology start-up when, in reality, it was a failing business from the outset.

28.     For example, in or about May 2017, Boice falsely reported in the Investor Presentation for the Series A funding round that Trustify had earned $5 million in revenue in 2016 when Trustify had earned only approximately $1.4 million – less than one third of the revenue figure Boice reported to investors.

29.     In March 2018, when soliciting investment in the Series B funding round, Boice included a chart in the Investor Presentation that falsely depicted steady revenue growth throughout 2017 with monthly revenue between $500,000 and nearly $800,000.  In reality, Trustify's quarterly revenue actually declined throughout 2017 from approximately $400,000 to approximately $150,000.

30.     To induce additional investments from existing investors, Boice emailed Quarterly Updates that contained numerous misrepresentations about Trustify's revenue, including, among other things:

a.      the Quarterly Update dated April 2, 2016, falsely stated that revenue for the first quarter of 2016 was $500,000, when, in reality, revenue was only approximately $315,237;

b.      the Quarterly Update dated July 5, 2016, falsely stated that revenue for the second quarter of 2016 was $774,339 – more than double the actual revenue of $315,426;

c.      the Quarterly Update dated October 3, 2016, falsely stated that revenue for the third quarter of 2016 was approximately $1,344,071 – nearly three times greater than the actual revenue of $389,724;

d.      the Quarterly Update dated May 9, 2018, falsely stated that revenue for the first quarter of 2018 grew "70% . . . over Q1 2017," when in fact revenue had decreased by at least 45%; and

e.      the Quarterly Update dated October 14, 2018, falsely stated that revenue for the third quarter of 2018 had "[e]xceeded revenue goals" and "revenue numbers continue to be very strong," when revenue had plummeted and Trustify could no longer pay its vendors or employees.

31.      After receiving Quarterly Updates that contained false revenue figures, among other things, several investors invested additional funds in Trustify.

32.      As CEO, Boice knew that the revenue figures he included in Investor Presentations and Quarterly Updates were fabricated and were designed to give investors the false impression that Trustify was a growing and viable company.

**B.      Defendants Lied About Significant Corporate Clients and the Size of Its Private Investigator Network**

33.      To mislead investors about Trustify's success in growing its corporate customer base, Boice falsely claimed that Trustify had secured lucrative contracts with certain significant

corporate clients.

34.     In the Quarterly Updates emailed to investors in 2016 and in the Series A Investor Presentation, Boice falsely stated that Trustify had successfully contracted with a major homecare provider to vet their network of caregivers.

35.     Similarly, in an email to an investor in February 2016, Boice stated that Trustify "just closed that large deal with [a major homecare provider] where we'll be vetting their 17M+ care providers," resulting in in "$100k+ [monthly recurring revenue] just from this deal alone."

36.     On February 18, 2016, after receiving this information from Boice, that investor invested an additional $100,000 in Trustify.

37.     None of these statements were true.  The homecare provider did not contract with Trustify or hire Trustify in any capacity.

38.     In or about May 2018, in the Series B Investor Presentation, Boice identified by logo professional sports leagues and major television networks as part of Trustify's "New & Noteworthy Clients."

39.     Boice claimed that one major television network found Trustify "organically" by using Trustify's website, and quoted an alleged representative from the network saying: "Trustify has provided us a new capability when it comes to quickly vetting information."

40.     These representations were false.  The major professional sports leagues and television networks that Boice touted as clients in the Series B Investor Presentation were not clients of Trustify.  To further exaggerate the growth and reach of the company, Boice repeatedly claimed in Investor Presentations and Quarterly Updates that Trustify had thousands of private investigators.

41.     For example, in the Investor Update dated January 2016, Trustify announced it had over 4,000 investigators in network when, at its busiest, Trustify had only 600 in-network investigators, only a fraction of whom ever performed work for the company.

**C.     Defendants Misrepresented the Intended use of Investor Proceeds and Misappropriated Investor Funds.**

42.     In subscription agreements ("Subscription Agreements) and terms sheets ("Term Sheets") for the Offerings, Defendants represented to investors that the proceeds from the sales of shares and promissory notes would be used for "working capital and general corporate purposes" of Trustify.

43.     Similarly, in Investor Presentations, Boice generally stated that half of the funds raised from investors from the Offerings would be used to develop and maintain technology, while the other half would be used for marketing and revenue growth.

44.     Contrary to these representations, of the more than $18.5 million raised, between March 2015 and November 2018, Boice used at least $8 million of investor money for his and Mellon's personal benefit to support their extravagant lifestyle and failed to disclose such use of proceeds to investors.

45.     As early as March 2015, Boice began diverting investor funds from Trustify's operating account to a bank account for GoLean, a company Boice alone controlled.

46.     Between March 2015 and December 2015, Boice diverted a total of approximately $528,000 to GoLean and used the entirety of those funds for personal expenses, including a total of approximately $300,000 for a down payment on his and Mellon's home in Alexandria, Virginia.

47.     Boice continued to divert investor funds to GoLean for months after Virginia's State Corporation Commission placed GoLean on inactive status for failing to pay its annual registration fee.

48.     Mellon wrote checks out of the GoLean account to pay for purely personal expenses, including those related to her wedding to Boice, healthcare, private school tuition, and payments for their Alexandria home.

49.     In addition to the investor funds diverted to GoLean for their personal use, Boice charged more than $4 million of his and Mellon's personal expenses to credit cards that were paid from Trustify's business account, including $125,000 to hire a private jet to fly their children to summer camp, $10,000 on a family vacation to Canyon Ranch & Spa, $134,000 on purchases from Amazon.com, and $5,000 worth of jewelry.

50.     Boice also wired approximately $1,025,275 from Trustify's bank accounts into his and Mellon's personal joint bank account, $50,000 of which was transferred to Mellon's personal bank account in June 2017.

51.     In addition, Boice spent approximately $2.2 million in the form of cash and Google/Paypal transactions.

52.     These expenses were totally unrelated to Trustify's stated business purpose and were contrary to the explicit statements in the Investor Presentations, Subscription Agreements and Term Sheets concerning the use of investor proceeds.  Boice never informed investors that their funds would be used to pay for his personal expenses.

53.     Boice knew that the statements to investors concerning the intended use of investor proceeds were false and misleading because Boice himself diverted investor funds away from Trustify to use for his and Mellon's personal benefit.

10

## II.     DEFENDANTS FRAUDULENTLY INDUCED THEIR LARGEST INVESTOR TO INVEST AN ADDITIONAL $1.957 MILLION IN TRUSTIFY

54.     In June 2018, Defendants fraudulently induced an existing venture capital investor (the "Venture Capital Fund") to invest an additional $1.957 million in Trustify's Series B offering.

55.     Boice told the Venture Capital Fund that an established investment bank had agreed to be the lead investor for the Series B round.  This was not true.

56.     The Venture Capital Fund, which previously had invested just over $4.7 million in the Series A round, agreed with Boice to wire funds for the Series B round if the following conditions were met: (1) it received confirmation that the investment bank had wired funds to Trustify; (2) the round was substantially funded prior to its investment; (3) its investment would be escrowed in a specific bank account; and (4) its investment would be returned if the Series B round did not meet its minimum investment target of $15 million.

57.     In June 2018, Boice caused the Venture Capital Fund to receive an email that purported to be from the investment bank's managing partner ostensibly confirming the investment bank's $7.5 million investment and welcoming the Venture Capital Fund to the Series B round.  The email was fake.

58.     Based on this email and other misrepresentations, the Venture Capital Fund wired $1.957 million to Trustify on June 14, 2018 with the understanding that it would obtain shares of Series B Preferred Stock if the round closed or receive its money back.

59.     Contrary to his representations to the Venture Capital Fund, Boice did not place the Venture Capital Fund's money in an escrow account.  Instead, as set forth above, he used the funds for his personal expenses.

## III.    DEFENDANTS VIOLATED THE FEDERAL SECURITIES LAWS

60.    At all relevant times, Boice operated and controlled Trustify.

61.    The preferred stock offered and convertible promissory notes sold by Defendants (the "Securities") were securities within the meaning of the Securities Act and the Exchange Act.

62.    Investors provided Defendants an investment of money—at least 90 investors gave Defendants at least $18.5 million.

63.    Boice pooled investors' money into bank accounts and represented that he would use those funds to operate Trustify and grow the business.

64.    Investors made their investment with a reasonable expectation of profits to be derived solely from Defendants' supposed ability to generate profits without any participation by any of its investors.

65.    Defendants engaged in the conduct described herein, including the offer and sale of the Securities, by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

66.    Defendants solicited investment from investors throughout the United States and abroad through the use of the internet and online platforms.

67.    Defendants knowingly made material untrue statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.    A reasonable investor would consider the misrepresented facts and omitted information described herein—including, among other things, misrepresentations and omissions regarding Trustify's revenue growth, contracts with significant corporate clients, and the use of

investors' money to pay for Boice's personal expenses—important in deciding whether or not to purchase the Securities.

69.     The untrue statements of material fact and material omissions described herein were made in the offer or sale and in connection with the purchase or sale of securities.

70.     In connection with the conduct described herein, Defendants acted knowingly or recklessly.  Defendants knew or were reckless in not knowing that they were making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances.

71.     Defendants obtained money or property by means of untrue statements of material fact and omissions of material fact necessary in order to the make the statements made, in light of the circumstances under which they were made, not misleading.  Investors sent money directly to the Defendants, and Boice took the money for his own use and benefit.

72.     Defendants used devices, schemes, and artifices to defraud investors, and engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon the investors.  In addition to the numerous misrepresentations discussed herein, among other things, Defendants misled investors and misappropriated investors' funds for Boice's and Mellon's personal use and benefit.

## IV.    RELIEF DEFENDANTS BENEFITED FROM THE FRAUD

73.     GoLean benefited from Defendants' fraudulent scheme.  Defendant Boice diverted to GoLean at least $528,000 that came from investors who were told that they were investing in Trustify.  GoLean did not provide money, goods, services, or anything else of value in exchange for these funds.

13

74.     These transfers of funds to GoLean were part of, and in furtherance of, the securities laws violations alleged herein.  Therefore, GoLean has been unjustly enriched.

75.     Mellon benefited from Defendants' fraudulent scheme.  Mellon wrote checks for purely personal expenses, including expenses for her wedding to Boice, out of the GoLean account, which was funded almost exclusively with funds of Trustify's investors.

76.     At least $150,000 of Mellon's personal credit card charges were expensed to Trustify and paid with investor funds, including flights to the Caribbean island of Nevis, jewelry and clothing, and a family vacation to Cancun, Mexico.

77.     Mellon also received money in excess of her approved salary, including $50,000 wired into her personal account in June 2017.  Mellon did not provide money, goods, services, or anything else of value in exchange for these funds.

78.     The transfer of funds to Mellon, which were in excess of her salary, were part of, and in furtherance of, the securities laws violations alleged herein.  Therefore, Mellon has been unjustly enriched.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Against Boice and Trustify)

79.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 78, above, as if the same were fully set forth herein.

80.     From at least March 2015 through the present, as a result of the conduct alleged herein, Defendants Boice and Trustify knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

14

      a.      employed devices, schemes or artifices to defraud;

      b.      obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.      engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

81.      By engaging in the foregoing conduct, Defendants Boice and Trustify violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**
**(Against Boice and Trustify)**

82.      The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 78, above, as if the same were fully set forth herein.

83.      From at least March 2015 through the present, as a result of the conduct alleged herein, Defendants Boice and Trustify, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

      a.      employed devices, schemes or artifices to defraud;

      b.      made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.      engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

15

84.     By engaging in the foregoing conduct, Defendants Boice and Trustify violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Against Relief Defendant GoLean DC, LLC)

85.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 78, inclusive, as if they were fully set forth herein.

86.     Between March 2015 and December 2015, Boice diverted approximately $540,885 of investor funds to GoLean via direct money transfers from Trustify's operating account and to GoLean's bank account, which Boice alone controlled.  Boice then used the money in GoLean's account to pay for his personal living expenses.

87.     GoLean obtained investor funds described above as part of, and in furtherance of, the securities law violations alleged above.

88.     GoLean has no legitimate claim to these ill-gotten gains, which are proceeds of the securities fraud alleged above, and it is not just, equitable, or conscionable for it to retain the funds.

89.     Accordingly, GoLean is liable as a relief defendant and should be required to disgorge all ill-gotten gains which inured to its benefit under the equitable doctrines of disgorgement, unjust enrichment, and/or constructive trust.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Against Relief Defendant Jennifer Mellon)

90.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 78, inclusive, as if they were fully set forth herein.

91.     Between March 2015 and July 2018, Mellon received at least $200,000 of investor funds, in excess of her salary, for payment of personal living expenses and charges to a corporate credit card.

92.     Mellon obtained investor funds described above as part of, and in furtherance of, the securities law violations alleged above.

93.     Mellon has no legitimate claim to these ill-gotten gains, which are proceeds of the securities fraud alleged above, and it is not just, equitable, or conscionable for her to retain the funds.

94.     Accordingly, Mellon is liable as a relief defendant and should be required to disgorge all ill-gotten gains which inured to her benefit under the equitable doctrines of disgorgement, unjust enrichment, and/or constructive trust.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

I.

Permanently restraining and enjoining Defendants Boice and Trustify from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Ordering Defendants Boice and Trustify to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint.

III.

Ordering Defendants Boice and Trustify to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §

17

78u(d)(3)];

## IV.

Ordering Relief Defendant Mellon to disgorge all ill-gotten gains to which she does not have a legitimate claim that she received as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon;

## V.

Ordering Relief Defendant GoLean to disgorge all ill-gotten gains to which it does not have a legitimate claim that it received as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon; and

## VI.

Granting such other and further relief as the Court may deem just and appropriate.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Commission hereby requests that this case be tried to a jury.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

Dated:  July 24, 2020            By:     /s/ Nicholas C. Margida
                                         Nicholas C. Margida
                                         Virginia Bar No. 73176
                                         Securities and Exchange Commission
                                         100 F Street, NE
                                         Washington DC 20549-5977
                                         Telephone: (202) 551-8504
                                         Fax: (202) 772-9292
                                         Email: margidan@sec.gov

Jennifer Chun Barry (*Pro hac vice* to be filed)
Karen M. Klotz (*Pro hac vice* to be filed)
Securities and Exchange Commission
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Email: barryj@sec.gov
klotzk@sec.gov