IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL K. BOICE, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:20cv0853 (TSE/JFA)<br>)<br>)<br>)<br>)<br>) |

## **PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiff Securities and Exchange Commission's ("SEC" or "plaintiff") motion for default judgment against defendants Daniel K. Boice, Trustify, Inc. ("Trustify"), and GoLean DC, LLC ("GoLean") (collectively "defendants"). (Docket no. 28).[1] Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### **Procedural Background**

On July 24, 2020, plaintiff filed a complaint against Mr. Boice and Trustify alleging violations of Section 17(a) of the Securities Act of 1933 and violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder; and against GoLean for unjust enrichment. (Docket no. 1). On August 5, 2020, plaintiff filed an amended complaint alleging the same claims. (Docket no. 11) ("Compl."). Summonses were issued for service on

---

[1] Jennifer Mellon is also named as a defendant, but counsel has made an appearance on her behalf and the SEC is not seeking a default judgment against Ms. Mellon at this time.

1

defendants on August 7, 2020. (Docket no. 12). On August 19, 2020, plaintiff filed a return of service indicating that defendants were served with a summons, complaint, and amended complaint—the summonses, complaint, and amended complaint were served personally on Mr. Boice, who is also the registered agent for Trustify and GoLean. (Docket no. 18). In accordance with Federal Rule of Civil Procedure 12(a), defendants' responsive pleading(s) was due on September 8, 2020, twenty-one (21) days after defendants were served with the summonses and complaints. None of the defendants have filed a responsive pleading and the time for doing so has expired.

On September 21, 2020, the District Judge ordered plaintiff to immediately seek entry of default. (Docket no. 19). Plaintiff requested entry of default as to defendants on September 22, 2020. (Docket no. 20). The Clerk of Court entered default as to defendants on November 6, 2020. (Docket no. 25). On January 26, 2021, plaintiff filed a motion for default judgment (Docket no. 28), and the next day filed a memorandum in support (Docket no. 29) and a notice of hearing on the motion for February 5, 2021 (Docket no. 30). On February 5, 2021, plaintiff's counsel appeared before the undersigned, but no one appeared on behalf of the defendants.

## Factual Background

The following facts are established by the amended complaint. (Docket no. 11). Between 2015 and 2018, Mr. Boice raised over $18.5 million for Trustify from more than 90 investors located in multiple states by making materially false and misleading statements and omissions. (Compl. ¶ 2, 26). Plaintiff's false statements and omissions were made concerning Trustify's revenue growth, its corporate client base, the size of its investigator network, and the use of investor funds. *Id.* Mr. Boice founded and was CEO of Trustify and founded GoLean; and he was a resident of Alexandria, Virginia at all relevant times. (Compl. ¶ 13). Trustify is a

2

Delaware corporation founded in 2015 that maintained an office in Arlington, Virginia. (Compl. ¶ 14). Trustify operated an online application that connected private investigators with individuals and businesses. *Id.* GoLean is a Virginia LLC and purported consulting company founded in 2014 with an office address in Arlington, Virginia. (Compl. ¶ 15). From 2015 to 2018, Trustify conducted five offerings, four equity offerings and one debt offering. (Compl. ¶ 21).

In marketing Trustify's securities to potential investors, Mr. Boice created or caused to be created investor presentations for the offerings, which detailed Trustify's business, its quarterly and/or annual revenue, its significant clients, and the intended use of investor proceeds. (Compl. ¶ 22). Mr. Boice also emailed quarterly updates to existing investors detailing Trustify's alleged successes, revenue, performance indicators, and plans for future growth. (Compl. ¶ 23). By Fall 2018, Trustify could not pay its vendors or employees, yet Mr. Boice continued to solicit investments for Trustify by misrepresenting to prospective investors its revenue, corporate client base, the size of its investigator network, and the use of investor funds. (Compl. ¶ 25).

From January 2016 through October 2018, Mr. Boice misrepresented Trustify's revenue in the investor presentations and quarterly updates to give the impression that Trustify was a successful startup when, in fact, Trustify was never meeting its proposed targets and eventually was a failing and then collapsing enterprise. (Compl. ¶¶ 27–30). Trustify's purported revenue was often two to three times greater than its actual revenue. (Compl. ¶¶ 28–30). Trustify purported to be increasing revenue and meeting revenue projections even as revenue declined and Trustify could no longer pay employee salaries or its vendors. (Compl. ¶ 30e). Several investors invested additional funds in Trustify after receiving false revenue figures in quarterly updates. (Compl. ¶ 31). Given that Mr. Boice was CEO of Trustify and created these

presentations and updates, he was aware the figures were false and intended to give the false impression that Trustify was a viable and growing company. (Compl. ¶ 32).

Mr. Boice also falsely claimed Trustify had entered into lucrative contracts with corporate clients to mislead investors about Trustify's success in growing its corporate customer base. (Compl. ¶¶ 33–35, 38–39). One investor invested an additional $100,000 after receiving some of this false information. (Compl. ¶ 36). Mr. Boice also repeatedly stated in these presentations and updates that Trustify had thousands of private investigators, at one point asserting it had 4,000 private investigators when it only ever had, at most, 600. (Compl. ¶¶ 40–41). Another investor, this one a venture capital fund, invested nearly $2 million in additional funds in Trustify based on Mr. Boice's false assertions and false documentation that an established investment bank had invested in Trustify. (Compl. ¶¶ 57–58). To secure this additional near $2 million, Mr. Boice fabricated an email purporting to be from the bank's managing partner ostensibly confirming the bank's nonexistent $7.5 million investment. *Id.* Mr. Boice's spent the nearly $2 million invested in reliance on his false statements and fabricated email on personal expenses. (Compl. ¶ 59).

In terms sheets and subscription agreements for the offerings, Mr. Boice and Trustify represented to investors that the proceeds from the sales of shares and promissory notes would be used for "working capital and general corporate purposes" of Trustify; and in investor presentations Mr. Boice would generally state that half the funds would be used to develop and maintain technology and the other half for marketing and revenue growth. (Compl. ¶¶ 42–43). In fact, of the more than $18.5 million raised in the offerings, at least $8 million was used for Mr. Boice's, and his wife's, personal benefit which was not disclosed to investors. (Compl. ¶¶ 44, 49–52). As early as March 2015, Mr. Boice was diverting investor funds from Trustify's

operating account to a bank account for GoLean, a company he solely controlled. (Compl. ¶ 45). Between March 2015 and December 2015, Mr. Boice transferred $540,885 from Trustify's account to GoLean's account; and GoLean provided no money, goods, services, or anything else of value for the funds it received from Trustify. (Compl. ¶¶ 46, 73, 86). Mr. Boice used that money solely for personal expenses. *Id.* Mr. Boice was aware that the statements to investors regarding the use of their investments were false and misleading because he was diverting these funds. (Compl. ¶ 53).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on the defendants' failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default against defendants. (Docket no. 25).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Plaintiff alleges that this matter is properly before this court pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 (15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)) and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78u(d), 78u(e), and 78aa) to enjoin such acts, transactions, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as the Court may deem just and appropriate. (Compl. ¶ 10). These statutes, as well as 28 U.S.C. § 1331, establish subject matter jurisdiction.

The court also has personal jurisdiction over the defendants. Mr. Boice resided in this District at all times relevant to these claims, and this District was the principal place of business for Trustify and GoLean. (Compl. ¶ 11). Venue is proper in this court pursuant to Section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)) and Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), and pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to plaintiff's claims against defendants occurred in this District. (Compl. ¶¶ 11–12).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendants, and that venue is proper in this court.

## Service

Pursuant to Federal Rule of Civil Procedure 4(h), a corporation, partnership, or other unincorporated association may be served in a judicial district of the United States (1) in the manner prescribed in Rule 4(e)(1) for serving an individual, or (2) by delivering a copy of the

summons and complaint to an officer, manager, or general agent, or any other agent authorized by law to receive service of process.

On August 7, 2020, summonses were issued for the defendants. (Docket no. 12). On August 17, 2020, Steven Cook, a private process server, delivered the summonses, complaint, and amended complaint to Daniel K. Boice, serving Mr. Boice personally, and simultaneously serving the registered agent for Trustify and GoLean (Mr. Boice). (Docket no. 18). Based on the foregoing, the undersigned magistrate judge recommends a finding that service of process has been accomplished in this action.

### **Grounds for Default Judgment**

In accordance with Federal Rule of Civil Procedure 12(a), defendants were required to file a responsive pleading by September 8, 2020, twenty-one (21) days after defendants were served with the summonses, complaint, and amended complaint. No responsive pleading has been filed by defendants and the time for doing so has expired. On September 22, 2020, plaintiff filed a request for entry of default against defendants pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 20). The certificate of service accompanying the filing indicates that plaintiff's counsel sent copies to defendant Mr. Boice, who is also the other two defendants' registered agent. (Docket no. 20-3). The Clerk of Court entered a default against defendants on November 6, 2020. (Docket no. 25).

On January 26, 2021, plaintiff filed a motion for default judgment (Docket no. 28), and the next day filed a separate memorandum in support (Docket no. 29), and notice of hearing for February 5, 2021 (Docket no. 30). The certificates of service accompanying the motion and memorandum in support indicate that plaintiff's counsel sent copies of the motion, memorandum, and notice to defendants. (Docket nos. 28-3, 29-1). For the reasons stated above,

summons and complaint to an officer, manager, or general agent, or any other agent authorized by law to receive service of process.

On August 7, 2020, summonses were issued for the defendants. (Docket no. 12). On August 17, 2020, Steven Cook, a private process server, delivered the summonses, complaint, and amended complaint to Daniel K. Boice, serving Mr. Boice personally, and simultaneously serving the registered agent for Trustify and GoLean (Mr. Boice). (Docket no. 18). Based on the foregoing, the undersigned magistrate judge recommends a finding that service of process has been accomplished in this action.

### **Grounds for Default Judgment**

In accordance with Federal Rule of Civil Procedure 12(a), defendants were required to file a responsive pleading by September 8, 2020, twenty-one (21) days after defendants were served with the summonses, complaint, and amended complaint. No responsive pleading has been filed by defendants and the time for doing so has expired. On September 22, 2020, plaintiff filed a request for entry of default against defendants pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 20). The certificate of service accompanying the filing indicates that plaintiff's counsel sent copies to defendant Mr. Boice, who is also the other two defendants' registered agent. (Docket no. 20-3). The Clerk of Court entered a default against defendants on November 6, 2020. (Docket no. 25).

On January 26, 2021, plaintiff filed a motion for default judgment (Docket no. 28), and the next day filed a separate memorandum in support (Docket no. 29), and notice of hearing for February 5, 2021 (Docket no. 30). The certificates of service accompanying the motion and memorandum in support indicate that plaintiff's counsel sent copies of the motion, memorandum, and notice to defendants. (Docket nos. 28-3, 29-1). For the reasons stated above,

the undersigned magistrate judge recommends a finding that the Clerk of Court properly entered a default as to defendants and that defendants have notice of these proceedings.

## Liability

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the amended complaint are deemed admitted. *See* Fed. R. Civ. P. (8)(b)(6).

### Claims of Violations of Section 17(a) of the Securities Act of 1933, and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Thereunder, Against Mr. Boice and Trustify (Counts I & II)

Count I of plaintiff's amended complaint alleges that from at least March 2015 through the present, Mr. Boice and Trustify knowingly or recklessly or, with respect to subparts (2) and (3) below, negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

(1) employed devices, schemes or artifices to defraud;

(2) obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities. (Compl. ¶ 80). Plaintiff's Count I closely tracks the statute, Section 17(a) of the Securities Act of 1933. 15

U.S.C. § 77q(a). Scienter is an element of Section 77q(a)(1) (devices, schemes or artifices to defraud), but not Sections (2) or (3). *Aaron v. SEC*, 446 U.S. 680, 695–97 (1980).

Count II of plaintiff's amended complaint alleges that from at least March 2015 through the present, Mr. Boice and Trustify, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

a. employed devices, schemes or artifices to defraud;

b. made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security. (Compl. ¶ 83). Plaintiff's Count II closely tracks Rule 10b-5 (17 C.F.R. § 240.10b-5), promulgated under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)). Although the language of the Rule is similar to the statute in Count I, scienter is an element of all three subsections in the Rule, not just the first subsection. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 212–14 (1976). Otherwise, the proscriptions in Section 17(a), and Section 10(b) and Rule 10b-5 thereunder are the same except "§ 10(b) and Rule 10b-5 apply to acts committed in connection with a *purchase or sale* or securities [whereas] § 17(a) applies to acts committed in connection with an *offer or sale* of securities. *SEC v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995) (citing *SEC v. International Loan Network, Inc.*, 770 F.Supp. 678, 694 (D.D.C. 1991), *aff'd* 968 F.2d 1304 (D.C. Cir. 1992)).

The elements of both Counts are therefore: whether Mr. Boice and Trustify (1) made a false statement or omission (2) of material fact (3) with scienter[2] (4) in connection with the purchase[3] or sale of securities. *McConville v. SEC*, 465 F.3d 780, 786 (7th Cir. 2006) (citing *Maio*, 51 F.3d at 630); *see also SEC v. Pirate Investor, Inc.*, 580 F.3d 233, 239 (4th Cir. 2009). A fact is material "if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Pirate Investor*, 580 F.3d at 240 (quoting *Longman v. Food Lion, Inc.*, 197 F.3d 675, 683 (4th Cir. 1999)). "[S]cienter refers to a mental state embracing intent to deceive, manipulate, or defraud." *Ottman v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 343 (4th Cir. 2003) (quoting *Hochfelder*, 425 U.S. at 194 n.12). Recklessness also meets the scienter requirement. *Id.* at 343–44 (citing cases). Recklessness is "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 343 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999)).

From January 2016 to October 2018, Mr. Boice and Trustify[4] misrepresented Trustify's revenue in investor presentations and quarterly updates. (Compl. ¶ 27). In the investor

---

[2] There could also be violations of two of the three subsections of 17(a) without a finding of scienter. *See Aaron*, 446 U.S. at 695–97.

[3] Section 17(a) could be violated through merely an offer without the purchase or sale of securities, but as there were offers, purchases, and sales of securities in connection with all the acts alleged, the distinction is irrelevant here. *See Maio*, 51 F.3d at 631.

[4] As founder and CEO, Mr. Boice's false statements and omissions (and his scienter) are attributable to Trustify. *See Knurr v. Orbital ATK Inc.*, 294 F.Supp. 3d 498, 513–14 (E.D. Va. 2018) (discussing multi-circuit authority).

10

presentation for a stock offering in May 2017, Mr. Boice and Trustify stated Trustify's revenue in 2016 was $5 million when it was approximately $1.4 million. (Compl. ¶ 28). In the investor presentation for a stock offering in March 2018, Mr. Boice and Trustify stated Trustify's monthly revenue had grown to between $500,000 and $800,000, even though Trustify's *quarterly* revenue had actually declined from approximately $400,000 to approximately $150,000. (Compl. ¶ 29). These offerings netted Trustify millions in stock sales. (Compl. ¶ 21). Mr. Boice and Trustify also significantly inflated revenue numbers in quarterly updates to induce additional investment from existing investors. (Compl. ¶ 30).

In quarterly updates to investors in 2016, and in the investor presentations to the May 2017 and March 2018 stock offerings, Mr. Boice and Trustify stated Trustify had secured lucrative contracts with corporate clients; and in an email to an investor in February 2016, Mr. Boice made a similar claim regarding a major homecare provider. (Compl. ¶¶ 33–35, 38–39). Mr. Boice and Trustify also repeatedly claimed in investor presentations and quarterly updates that Trustify had thousands of private investigators in network when, at its peak, it only had 600. (Compl. ¶¶ 40–41). All these statements were false. (Compl. ¶¶ 33, 37, 40–41). In the subscription agreements and terms sheets for the offerings of stock and promissory notes, and in the investor presentations, Mr. Boice and Trustify stated the proceeds from the sales would be used for Trustify's working capital and general corporate purposes—sometimes specifically identified as developing and maintaining technology, marketing, and revenue growth. (Compl. ¶¶ 42–43). Contrary to these assertions, between March 2015 (two months after the first stock offering opened) and November 2018, Mr. Boice used at least $8 million for his and his wife's personal benefit; and from March 2015 to December 2015, Mr. Boice transferred $540,885 to GoLean—all of which Mr. Boice spent on personal expenses. (Compl. ¶¶ 44–46, 48, 86).

As alleged in the amended complaint, Mr. Boice was both CEO and the creator of these presentations, updates, and emails, therefore the scienter requirement is met. Mr. Boice either made these false statements with the intent to defraud his investors or he was reckless in including such dramatically inflated revenue and private investigator numbers, as well as misrepresenting the intended use of the investor proceeds and the securing of corporate clients and contracts. The danger of misleading these investors was so obvious that Mr. Boice and Trustify must have been aware of it. All of these facts are clearly material because investors would consider Trustify's revenue and private investigator numbers, securing of corporate clients and contracts, and use of investor proceeds, important in deciding whether to buy the stocks or promissory notes. The securing of corporate clients and contracts, and having a large numbers of in-network investigators, would have been important to a reasonable investor's decision; but the use of investor proceeds on personal expenses and the reality of limited and then declining revenues likely would have been determinative in a reasonable investor's decision. Accordingly, because Mr. Boice and Trustify made false statements about material facts with the intent, or at least reckless likelihood, of defrauding investors in connection with offers, purchases, and sales of securities, they violated Section 17(a) of the Securities Act of 1933 and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. Therefore, the undersigned recommends a finding that plaintiff has established that Mr. Boice and Trustify are liable under Counts I and II.

### Unjust Enrichment Claim Against GoLean (Count III)

Count III of plaintiff's amended complaint states an unjust enrichment claim as to GoLean's receipt of $540,885 of investor funds from Trustify, in furtherance of the above detailed securities law violations, without GoLean having any legitimate claim to those funds. (Compl. ¶¶ 86–88). "Federal courts may order equitable relief against a person who is not

accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002) (quoting *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)).

As discussed above, GoLean received investor proceeds, ultimately used for Mr. Boice's personal expenses, in violation of securities laws. As alleged in the amended complaint, GoLean had no legitimate claim to the funds because it provided no money, goods, services, or anything else of value for the funds. (Compl. ¶¶ 73, 86). Accordingly, the undersigned recommends a finding that plaintiff has established that relief defendant GoLean has been unjustly enriched by its receipt of these funds.

### Relief

Plaintiff's amended complaint seeks (1) permanent injunctive relief restraining and enjoining defendants Mr. Boice and Trustify from violating Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)) and Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5); (2) disgorgement from Mr. Boice and Trustify of all ill-gotten gains, and prejudgment interest, from the activities described above; (3) an order requiring Mr. Boice to pay a civil penalty pursuant to Section 20(d) of the Securities Act (15 U.S.C. § 77t(d)) and Section 21(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)); and (4) disgorgement from GoLean of all ill-gotten gains to which it does not have a legitimate claim that it received as a result of the conduct alleged in the amended complaint, and prejudgment interest. (Compl. at 17–18). In the motion for default judgment, plaintiff requests that determinations as to monetary relief—disgorgement, civil penalty, and prejudgment interest—be deferred until after the parallel criminal case against Mr. Boice, *United States v. Boice*, 1:20-CR-

00167-TSE, is resolved and Mr. Boice has been sentenced, because Mr. Boice's sentence (he has already pled guilty) will likely impact the remedies plaintiff will seek. (Docket no. 28 at 1–2). Instead, in plaintiff's motion for default judgment, plaintiff only seeks that the court enter judgment by default against defendants, that plaintiff be given sixty days after Mr. Boice's sentencing to file its motion on monetary remedies, and that the court issue the permanent injunction described above.

**Monetary Relief**

Given (1) the parallel criminal proceeding in which Mr. Boice has already pled guilty and will be sentenced in March 2021; (2) the likelihood that the monetary and custodial sentence will affect the civil monetary relief plaintiff seeks (Docket no. 29 at 17); and (3) the lack of any reason not to defer until after sentencing in March; the undersigned magistrate judge recommends entry of an order entering judgment by default against Mr. Boice and Trustify for disgorgement, a civil penalty (only for Mr. Boice), and prejudgment interest, and against GoLean for disgorgement and prejudgment interest, but deferring a determination of the amount of that monetary relief and requiring that plaintiff file its motion detailing the monetary remedies within sixty days of Mr. Boice's sentencing.

**Permanent Injunctive Relief**

Under Section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and Section 21(d)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(1), a permanent injunction may be granted upon a proper showing; plaintiff "does not have to invoke the traditional equitable requirements for injunctive relief to obtain an injunction in this context." *SEC v. Marker*, 427 F.Supp. 2d 583, 590 (M.D. N.C. 2006) (citing *SEC v. First Am. Bank & Trust Co.*, 481 F.2d 673, 681–82 (8th Cir. 1973); *SEC v. Mgmt. Dynamics. Inc.*, 515 F.2d 801, 808 (2d Cir.

1975)). Instead, an injunction based on securities law violations "is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." *Id.* (quoting *SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir.1993)). The factors used to make this determination include:

> (1) the seriousness of the original violation; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved on the part of the defendant; (4) the defendant's recognition of his unlawful conduct and the sincerity of his assurances against future violations; and (5) the likelihood that the defendant's occupation will present opportunities for future violations.

*SEC v. Causwave, Inc.*, 2018 WL 4625407, at *6 (M.D. N.C. 2018) (citing *Marker*, 427 F.Supp. 2d at 590).

The original violation includes at least $8 million in investor funds spent on personal expenses, raised through false financial and other business data that deceived over 90 investors from multiple states over at least three years. The scienter is exceptionally strong in this case where not only did Mr. Boice and Trustify consistently and significantly inflate Trustify's revenue and number of investigators, but also lied about securing contracts with corporate clients, and even fabricated an email from the managing partner of an established investment bank purportedly confirming its position as lead investor in a stock offering. (Compl. ¶¶ 57–58). Although Mr. Boice pled guilty in the criminal case, he has not appeared in this civil case and thus has made no assurances whatsoever that he will not commit future violations. The only factor that may weigh in Mr. Boice's favor is the last one, as his current occupation is unknown, and he will be sentenced for securities fraud and wire fraud in the near future. No factor is determinative, but "the degree of scienter 'bears heavily'" on the determination. *Marker*, 427 F.Supp. 2d at 591 (quoting *Pros Int'l, Inc.*, 994 F.2d at 769). In addition, Mr. Boice's success at deceiving numerous investors into investing millions based on false financial and other business

15

data provided him the opportunity to spend a large proportion of that money on personal expenses. These factors, especially given the lack of any assurances from Mr. Boice that he will not commit future violations, establish a reasonable and substantial likelihood that Mr. Boice will violate securities laws in the future. *See, e.g., Marker*, 427 F.Supp. 2d at 591 (finding a permanent injunction appropriate even where defendant would be in his sixties when released from prison because of the scope and scale of the fraud and high degree of scienter). Accordingly, the undersigned magistrate judge recommends the entry of an order granting a permanent injunction as requested by the plaintiff.

## Conclusion

For these reasons, the undersigned recommends that default judgment be entered in favor of the Securities and Exchange Commission and against defendants Daniel K. Boice, Trustify, Inc., and GoLean DC, LLC for an amount to be determined after Mr. Boice is sentenced in the pending criminal matter. The undersigned also recommends entry of an order requiring that plaintiff file its motion on monetary remedies within sixty days of Mr. Boice's sentencing. And, the undersigned recommends the entry of a permanent injunction restraining and enjoining Daniel K. Boice and Trustify, Inc. from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Daniel K. Boice personally and as the registered agent of Trustify and GoLean at 431 N. Fletcher Avenue, Fernandina Beach, Florida 32034, the parties are notified that objections to this proposed findings of fact and recommendations must be filed

within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 5th day of February, 2021.

/s/ *JFA*
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia